# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

RANDY STRICKLAND,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

CIVIL ACTION NO.: 5:15-cv-57

(Case No.: 5:13-cr-21)

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Randy Strickland ("Strickland"), who is currently incarcerated at the Federal Prison Camp-McDowall in Welch, West Virginia, filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. (Doc. 1.) Respondent filed a Response, and Strickland filed a Reply. (Docs. 4, 7.) Strickland also filed a Motion for Evidentiary Hearing. (Doc. 8.) For the reasons which follow, I **DENY** Strickland's Motion for Evidentiary Hearing and **RECOMMEND** the Court **DENY** Strickland's Section 2255 Motion, **CLOSE** this case, and **DENY** Strickland *in forma pauperis* status on appeal and a Certificate of Appealability.

## BACKGROUND

Strickland was charged in this Court for attempted distribution of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). Compl., United States v. Strickland, 5:13-cr-21 (S.D. Ga. Oct. 17, 2013), ECF No. 3. Strickland subsequently was indicted for these same charged violations. Indictment, United States v. Strickland, 5:13-cr-21 (S.D. Ga. Nov. 6, 2013), ECF No. 16. United States Magistrate Judge James E. Graham appointed David McCrea to represent Strickland. CJA 20, United States v. Strickland, 5:13-cr-21 (S.D. Ga. Oct. 18,

2013), ECF No. 9. On November 27, 2013, Strickland entered a change of plea and pleaded guilty to Count 1 of the Indictment. Change of Plea, United States v. Strickland, 5:13-cr-21 (S.D. Ga. Nov. 27, 2013), ECF No. 27. Through his plea agreement, Strickland agreed that he had assented to act as security for individuals he believed were conducting drug transactions involving multiple ounce quantities of methamphetamine ice. Change of Plea, United States v. Strickland, 5:13-cr-21 (S.D. Ga. Nov. 27, 2013), ECF No. 27, p. 2. "He acted as the lookout for the purported dealers, while he was supposed to be working as a deputy and while he wore his law enforcement uniform and carried his law enforcement firearm." Id. The Honorable William T. Moore, Jr., sentenced Strickland to 93 months' imprisonment. J., United States v. Strickland, 5:13-cr-21 (S.D. Ga. July 18, 2014), ECF No. 41. Strickland did not file an appeal, despite Judge Moore granting Mr. McCrea's Motion for Extension of Time to do so. Order, United States v. Strickland, 5:13-cr-21 (S.D. Ga. July 24, 2014), ECF No. 43. Strickland filed his timely Section 2255 Motion on August 4, 2015. (Doc. 1.)

## DISCUSSION

In his Motion, Strickland contends Mr. McCrea provided ineffective assistance of counsel during the plea negotiations and during sentencing. The Government responds that Strickland's Motion is without merit.

**I. Ineffective Assistance of Counsel Standard**

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings. Strickland v. Washington, 466 U.S. 668 (1984). This right extends to the entry of a guilty plea, Hill v. Lockhart, 474 U.S. 52, 58 (1985), and during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001).

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance. Id. at 685–86. The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985). There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686). "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)). "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (internal citation omitted). "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." Id. at 1312–13. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690). "If a petitioner cannot satisfy one prong, we need not review the other prong." Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014). "[A] court deciding an actual ineffectiveness

claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690.

## II.     Ineffective Assistance Claims as to Plea Agreement

Strickland avers he did not enter into his plea agreement knowingly and voluntarily. Specifically, Strickland contends Mr. McCrea advised him to sign a plea agreement less than three weeks after his arrest, even without the benefit of all discovery materials. (Doc. 2, p. 22.) Strickland alleges Mr. McCrea told him to answer any questions the judge asked him in the affirmative or his plea would not be accepted. (Id. at p. 11.) According to Strickland, had his counsel investigated the facts of this case and the applicable law, he would not have given any credence to the Government's threat to bring 18 U.S.C. § 924(c) charges, with their attendant punishment of 25 to 30 years' imprisonment, against Strickland. Strickland maintains that counsel's lack of knowledge and ignorance of the law resulted "in faulty, unsound, and erroneous advice to sign a plea agreement" which was unfavorable to him. (Id.)

Strickland contends the contents of the plea agreement held him accountable for five ounces of methamphetamine "ice" in a ruse undercover transaction, and the "ice" doubled his sentence exposure. In addition, Strickland states the plea agreement "attempted to manipulate his carrying of a weapon [during] a drug related activity, although his function was as a 'lookout' to inform the other conspirators of law enforcement presence." (Id. at p. 23.) Further, Strickland asserts there is a reasonable probability a more favorable plea agreement could have been reached, such as an agreement attributing him with methamphetamine rather than ice, had counsel performed "even a cursory investigation[.]" (Id. at p. 25.)

The Government responds that not one of Strickland's "medley of random allegations of impropriety" is supported by the record. (Doc. 4, p. 10.) The Government contends Strickland's

allegations are either conclusory or factually incorrect. For instance, the Government states, despite Strickland's contention that Mr. McCrea failed to negotiate a more favorable plea or failed to investigate, Strickland fails to demonstrate how this is the case. Instead, the Government states Strickland was caught on tape committing the crimes, confessed to having committed the crimes, and admitted to all of the facts contained in the plea agreement during the change of plea, or Rule 11, hearing. (Id. at p. 11.) Additionally, the Government maintains Strickland testified that he understood the purpose of the Rule 11 hearing, understood his rights, and that he wanted to plead guilty to the charged offense because he was guilty. The Government asserts Strickland possessed a firearm during and in relation to two separate felony drug transactions and could have faced additional charges, which could have resulted in at least five more years' imprisonment. The Government also asserts Strickland was well aware of the cooperation provision, as this provision was outlined in his plea agreement, and Strickland certified that he read the agreement. Moreover, the Government avers that, even if Mr. McCrea did not fully apprise Strickland of the nature of the charges and the consequences of the plea, the Court certainly did so at the Rule 11 hearing. Thus, Strickland's plea was entered into knowingly and voluntarily. (Id. at pp. 14–15.)

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary. United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). "However, a defendant's guilty plea is not knowing and voluntary if he pled guilty on the advice of counsel and that counsel rendered ineffective assistance because his advice was outside of the range of competence demanded of attorneys in criminal cases." United States v. Munguia-Ramirez, 267 F. App'x 894, 897 (11th Cir. 2008) (internal citation omitted).

A defendant must live with what he has told a court under oath. A defendant's sworn testimony to the trial judge in open court is presumed to be truthful. In the context of a plea hearing, the United States Supreme Court has stated that "the representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977). The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. Id.

As part of his plea agreement with the Government, Strickland agreed to plead guilty to one count of attempting to knowingly and intentionally aid and abet the distribution of methamphetamine (ice), a Schedule II narcotic, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C) and 18 U.S.C. § 2. Plea Agreement, United States v. Strickland, 5:13-cr-21 (S.D. Ga. July 18, 2014), ECF No. 40, pp. 2–3. Strickland was made aware that he faced not more than twenty years' imprisonment. (Id. at p. 4.) However, Strickland also was made aware that no one had promised him any particular sentence and that the Court would not be bound by anyone's sentencing estimate but would be obligated to use the United States Sentencing Guidelines and other sentencing factors under 18 U.S.C. § 3553(a) to determine his sentence, including Strickland's relevant conduct. (Id.) Additionally, a cooperation provision was included in Strickland's plea agreement, which provided that the Government could move for a reduction in sentence based on any knowledge of additional offenses Strickland might have and to be fully truthful in providing this information. (Id. at pp. 5–6.) The Government agreed to move the Court to dismiss the criminal complaint against Strickland and to not indict Strickland for the two 18 U.S.C. § 924(c) offenses he committed, for which he faced a sentence of not less

than five years for the first offense and not less than twenty-five years for the second, if he were convicted, to be served consecutively to any other sentence imposed. (Id. at pp. 6–7.) On November 27, 2103, Strickland attested to the truth and accuracy of the factual basis of the plea and to having read and reviewed the agreement and to understanding and agreeing to the provisions of the agreement. (Id. at p. 10.)

Judge Moore informed Strickland at the outset of the Rule 11, or change of plea, hearing that the purpose of the hearing was to make a determination of whether Strickland was entering his plea freely and voluntarily, whether he understood the rights he was waiving by pleading guilty, and that there was a factual basis for the plea. Change of Plea Hr'g Tr., United States v. Strickland, 5:13-cr-21 (S.D. Ga. Sept. 14, 2015), ECF No. 50, p. 3. Judge Moore forewarned Strickland that, if he did not tell the truth during that hearing, he would be committing perjury and could be subjected to additional punishment. (Id.) After Strickland was sworn in, Judge Moore informed Strickland that he had the right to: a speedy and public trial; the assistance of counsel at every stage of the proceedings; participate in jury selection; confront the Government's proof; cross-examine witnesses; call his own witnesses, and choose whether to testify. (Id. at pp. 7–9.) Judge Moore explained to Strickland that he would be giving up all those rights if he pled guilty, and Strickland said he understood. (Id. at p. 9.) Strickland informed Judge Moore than he had known Mr. McCrea for approximately six weeks, had been truthful with him, met with him six times to discuss his case, and was satisfied with Mr. McCrea's representation. (Id. at p. 11.) Judge Moore read the Indictment and verified that Strickland was pleading guilty to the one count as charged. Judge Moore informed Strickland what the Government would have to prove beyond a reasonable doubt to a jury to obtain a conviction. Strickland indicated his understanding of the charge and the Government's burden

of proof. (Id. at pp. 12–13.) Judge Moore reminded Strickland of the statutory maximum sentence he faced but then advised Strickland that he had to consider the Sentencing Guidelines. (Id. at p. 13.) Judge Moore discussed with Strickland whether Mr. McCrea and he had discussed the Guidelines and how they could affect his sentence and that any guess or estimate Mr. McCrea made as to Strickland's sentence was not binding on the Court. (Id. at pp. 14–15.) In addition, Judge Moore told Strickland any guess or estimate Mr. McCrea made would only be that—a guess because, at that time, no one could know what Strickland's sentence would be. (Id.) Judge Moore asked Strickland whether anyone had done anything he considered wrong or unfair which forced him to plead guilty, and Strickland replied, "No, sir." (Id. at p. 16.)

Additionally, at the plea hearing, the Government summarized the plea agreement and the parties' obligations thereunder, and Strickland verified that his signature was contained on the agreement. (Id. at pp. 16–18.) Judge Moore addressed Strickland to review a couple of the provisions contained in the plea agreement, including the fact that the Government could file a motion for downward departure if Strickland provided substantial assistance in the investigation and prosecution of other individuals, either on a pre- or post-sentence basis. (Id. at p. 19.) Strickland stated he understood these provisions, including that Judge Moore was not obligated to grant any such motion. Strickland also stated no one had made him any promises outside of the plea agreement. Judge Moore opined that Strickland engaged in the change of plea proceeding "with intelligence and confidence, and he has offered his plea of guilty as a matter of his own free choice. . . . The offer to plead guilty to the charge is made voluntarily with an understanding of the charges and consequences of the plea." (Id. at pp. 21–22.) Strickland agreed that he was pleading guilty freely and voluntarily. (Id. at p. 21.)

Judge Moore then heard a proffer from the Government during which time Adam Rogalski, a Special Agent with the Federal Bureau of Investigation, testified as to the details of law enforcement's investigation, including Strickland's two attempts to aid and abet distribution of five ounces of methamphetamine ice. (Id. at pp. 22–27.) Strickland informed Judge Moore that he agreed with Agent Rogalski's testimony, and Judge Moore asked Strickland to provide his own account of his actions. (Id. at pp. 27–29.) Thereafter, Judge Moore determined there was a factual basis for Strickland's plea and accepted the plea. (Id. at p. 29.)

Strickland swore under penalty of perjury to tell the truth during his Rule 11 hearing before Judge Moore. Strickland agreed to the Government's summarization of the plea agreement, as well as Agent Rogalski's testimony, which included Strickland's agreement to plead guilty to the charged offense and for the amount of five ounces of methamphetamine ice. Strickland was made aware that he faced a statutory sentence of no more than twenty years' time, and he indicated his understanding of that potential sentence. Additionally, in exchange for Strickland's guilty plea, the Government agreed not to prosecute him for two Section 924(c) charges it claims Strickland committed.[1] Further, the plea agreement Strickland signed which was filed on this Court's docket was signed on November 27, 2013[2], and he was charged via a criminal complaint on October 17, 2013. In the intervening month and a half period, the

---

[1] The Court notes Judge Moore declined to assign a two-level enhancement for Strickland having a firearm on his person during the commission of the drug offenses. However, the Government could have indicted Strickland for this conduct, and it would have been left to a jury to determine whether Strickland violated Section 924(c), had he decided not to plead guilty.

[2] Strickland's submission of the signature page of his plea agreement is dated November 4, 2013. (Doc. 7-1, p. 2.) However, this page only contains Strickland's and Mr. McCrea's signatures and not the signature (or even the space for it) of any person with the United States Attorney's Office. The agreement filed upon the record in Strickland's criminal case provides the operative date of his plea agreement. The Court notes that the Government notified the Court of a signed plea agreement on November 7, 2013. Notice, United States v. Strickland, 5:13-cr-21 (S.D. Ga. Nov. 7, 2013), ECF No. 20.

Government had provided Mr. McCrea with discovery on at least two occasions. (Doc. 4, p. 3.) At the plea hearing, Strickland testified that he was satisfied with Mr. McCrea's representation.

Moreover, the 93 months' imprisonment Strickland received was well under the 240-month sentence he potentially faced for violations of 21 U.S.C. §§ 846 and 841, and Strickland could have faced prosecution for alleged violations of Section 924(c). Mr. McCrea was able to negotiate a very favorable plea on Strickland's behalf. Strickland's assertion that his counsel was ineffective during the plea stage, rendering his guilty plea involuntarily made, is belied by the record before the Court and is without merit. Strickland is not entitled to relief on this ground, and the Court should **DENY** this portion of his Motion.

### III. Ineffective Assistance Claims as to Sentencing

Strickland alleges McCrea rendered ineffective assistance of counsel during the sentencing phase in several ways. Notably, Strickland contends Mr. McCrea did not accompany him when he was interviewed by the United States Probation Office, failed to object to the weapons enhancement, did not spend any more than fifteen minutes discussing the Pre-Sentence Investigation report ("PSI") with Strickland, failed to submit a sentencing memorandum, and failed to seek a downward departure based on the safety valve provision. (Doc. 2, p. 27.)

The Government maintains that Strickland cites to no case law supporting his allegations that counsel was ineffective for failing to accompany him to the Probation Officer or to submit a sentencing memorandum. In addition, the Government asserts Strickland fails to allege or demonstrate any prejudice as to these distinct allegations. The Government states the record contradicts Strickland's contention that McCrea failed to discuss the Sentencing Guidelines with him and that this contention is without merit. (Doc. 4, p. 17.) The Government also states

Strickland did not qualify for a sentence reduction pursuant to the safety valve, and Mr. McCrea could not have been ineffective for failing to request this reduction.

### A. Failure to Accompany Strickland to Probation Office or to Submit Sentencing Memorandum

Strickland fails to identify any case law indicating that McCrea's alleged failure to accompany him to the Probation Office or to submit a sentencing memorandum constitutes deficient performance. In fact, what little case law the Court was able to find involving these same allegations concludes that the defendant's attorney was not ineffective. See, e.g., United States v. Faught, No. 5:98cr30-SPM/AK, 2007 WL 1424091, at *17 (N.D. Fla. May 7, 2007) ("[T]here is nothing in the PSR which suggests that Defendant was in any way prejudiced by having the interview with the Probation Officer without benefit of counsel."); United States v. Daily, 970 F. Supp. 628, 633–34 (N.D. Ill. 1997) ("Daily has not shown that his proceedings were altered because of counsel's non-attendance at the pre-sentence hearing, and Daily has not established an ineffective assistance of counsel claim here either."). Even if the Court could characterize Mr. McCrea's failure to accompany Strickland during his interview or to submit a sentencing memorandum as deficient performance, Strickland has not shown what prejudice he suffered as a result of these failures. Consequently, Strickland is not entitled to his requested relief on these grounds.

### B. Failure to Discuss the Sentencing Guidelines

Strickland's contention that Mr. McCrea failed to discuss the Sentencing Guidelines is contradicted by the record. Specifically, during the Rule 11 hearing, Judge Moore and Strickland engaged in the following colloquy:

THE COURT: Has your lawyer gone over the guideline information with you?

11

| | |
|---|---|
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Have you tried to learn in your discussions with your lawyer how these guidelines could affect the sentence in your case? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Do you understand that the Court is going to consider the guideline ranges as advisory when deciding upon your sentence? |
| THE DEFENDANT: | Yes, sir. |

Change of Plea Hr'g Tr., United States v. Strickland, 5:13-cr-21 (S.D. Ga. Sept. 14, 2015), ECF No. 50, p. 14. Because his contention is squarely contradicted by his own sworn testimony, Strickland is not entitled to his requested relief as to this ground.

### C. Failure to Object to Firearms Enhancement

In the Presentence Investigation ("PSI") report, the United States Probation Office recommended that Strickland's offense level be enhanced by two points under United States Sentencing Guidelines § 2D1.1(b)(1) for having committed an offense involving a dangerous weapon. Contrary to Strickland's assertion, Mr. McCrea lodged an objection to this recommendation. Sent. Hr'g Tr., United States v. Strickland, 5:13-cr-21 (S.D. Ga. Oct. 24, 2014), ECF No. 44, p. 11. Indeed, the Court sustained that objection. Judge Moore concurred with the findings of the PSI except as to that concerning an offense involving a dangerous weapon for which the Probation Office recommended the two-level enhancement. Judge Moore specifically found that, based "on a study of the guidelines, the history of that guideline, and on the history and intent of the sentencing commission, that that guideline is not fastly attached to the circumstances in this case." Id. Judge Moore recounted that in this case, Strickland agreed to act as a "lookout" for drug transactions and to warn the participants of law enforcement

activity in the area. (Id. at pp. 11–12.) On one date, Judge Moore noted, Strickland observed a drug transaction while parked in his official vehicle with his pistol in his holster on his hip. Id. Strickland also had the weapon on his hip after he exited the vehicle shortly after the transaction. (Id. at p. 12.) However, because Strickland never removed his weapon from his holster, pointed his weapon at anyone, or threatened anyone with the weapon, Judge Moore found that Strickland's possession of a firearm "is not the type of involvement with a weapon, under the circumstances of this case, that should require a two-level enhancement for an offense involving a dangerous weapon." (Id. at pp. 12–13.)

Therefore, even if the record did not contradict Strickland's averment that Mr. McCrea failed to object to the firearm enhancement, he obviously could not show that he was prejudiced by that failure to object. Judge Moore found the facts of the case did not warrant such an enhancement, and, thus, did not apply the enhancement. Consequently, Strickland is not entitled to any relief on this ground.

### D. Safety Valve Sentence Reduction

Strickland states that, had it not been for Mr. McCrea's "negligence and dereliction", there is a reasonable probability that he would have received "a much shorter sentence." (Doc. 2, p. 29.) Specifically, he contends that Mr. McCrea should have sought application of the Guidelines "safety valve" provision. That provision states that, in certain circumstances,

> the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that—
>
> > (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f). Section 5C1.2 of the United States Sentencing Guidelines ("U.S.S.G."), or the so-called "safety-valve" provision, enables a district court to sentence a defendant without regard to the statutory minimum for certain offenses if all five requirements of section 3553(f) are met. United States v. Milkintas, 470 F.3d 1339, 1344 (11th Cir. 2006). A defendant who satisfies these criteria is eligible for a two-level reduction in offense level. U.S.S.G. § 2D1.1(b)(11). The burden is on the defendant to show that he has met all of the safety-valve requirements. United States v. Cruz, 106 F.3d 1553, 1557 (11th Cir. 1997). "It is well-settled that a district court is not authorized to sentence a defendant below the statutory mandatory minimum unless . . . the defendant falls within the safety-valve of 18 U.S.C. § 3553(f)." United States v. Green, 425 F. App'x 843, 845-46 (11th Cir. 2011) (citing United States v. Castaing-Sosa, 530 F.3d 1358, 1360 (11th Cir. 2008)).

Nothing of record indicates Mr. McCrea was ineffective for failing to request a sentence reduction based on the safety valve provision. Moreover, even if Mr. McCrea had requested

such a reduction, Strickland would not have received it. Thus, Strickland fails to show any prejudice on this front.

Strickland did not qualify for safety-valve relief because he possessed a firearm in connection with the charged offense. As recounted above, Judge Moore declined to apply a two-level enhancement for a dangerous weapon under Guideline Section 2D1.1(b)(1). However, the Eleventh Circuit has explained that the question of whether a defendant receives an enhancement under Section 2D1.1(b)(1) is not synonymous with whether a defendant is disqualified from safety valve consideration under Section 5C1.2(a)(2). United States v. Carillo-Ayala, 713 F.3d 82, 91 (11th Cir. 2013). Moreover, the facts that Judge Moore recounted during the sentencing hearing would be sufficient to find that Strickland possessed the firearm in connection with the drug trafficking offense. See id. ("We hold that, under § 5C1.2(a)(2), a defendant possesses a firearm in connection with a drug offense . . . if the firearm facilitates the drug offense, whether by emboldening an actor who had the ability to display or discharge the weapon, . . . by instilling confidence in others who relied on the defendant, or serving as a 'badge of office' to help the defendant avoid detection.") (citations omitted). Again, Strickland admitted that he carried his law enforcement pistol on his hip while acting as a lookout for a drug transaction. "[T]he presence of a gun within a defendant's dominion and control during a drug trafficking offense ordinarily will suffice to show possession during and in relation to the offense and, therefore, that the defendant possessed the firearm in connection with the offense." Id.

In addition, even if Strickland did not possess a firearm in connection with his drug trafficking offense, he cannot satisfy the fifth and final factor of the safety valve provision. This provision is a "tell-all" clause: in order to satisfy it, the defendant has an affirmative responsibility to "truthfully disclose to the government all information and evidence that he has

about the offense and all relevant conduct." United States v. Johnson, 375 F.3d 1300, 1302 (11th Cir. 2004) (quotation marks and citation omitted) (emphasis in original). The Government explains that Strickland did not truthfully provide all information and evidence he had concerning the offenses which were part of the same course of conduct or of a common scheme or plan. (Doc. 4, p. 19.) Accordingly, Strickland would not have been able to meet his burden of establishing his entitlement to the safety valve provision, and he cannot show Mr. McCrea rendered ineffective assistance in failing to seek this downward departure.

In sum, Strickland has failed to show that Mr. McCrea rendered ineffective assistance during the sentencing phase of his criminal proceedings.

**IV.     Motion for Evidentiary Hearing**

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238–39 (11th Cir. 2004). Because Strickland's claims lack merit as a matter of law or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary. Consequently, the Court **DENIES** Strickland's request for such a hearing.

## V. Leave to Appeal *In Forma Pauperis* and Certificate of Appealability

The Court should also deny Strickland leave to appeal *in forma pauperis*. Though Strickland has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional

17

claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of Strickland's Motion and the Government's Response and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Strickland a Certificate of Appealability, Strickland is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DENY** Strickland's Motion, **DENY** Strickland *in forma pauperis* status of appeal, and **DENY** Strickland a Certificate of Appealability. The Court **DENIES** Strickland's Motion for Evidentiary Hearing.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address

any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon Strickland and the United States Attorney for the Southern District of Georgia.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 8th day of August, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

19